UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARK R. HURLBURT and
MELANIE HURLBURT,
    Plaintiffs,

v.

MASSACHUSETTS HOMELAND
INSURANCE COMPANY,
    Defendant.

No. 3:17-cv-503 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

Mark Hurlburt and Melanie Hurlburt (the "Hurlburts") sued Massachusetts Homeland Insurance Company ("Mass. Ins." or "Defendant") after Mass. Ins. denied coverage for visible cracking in concrete in their basement allegedly caused by a chemical reaction. Specifically, they allege breach of contract and the covenant of good faith and fair dealing and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42–100a *et seq.*; and the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a–815 *et. seq.*

Defendant now moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 11.

For the following reasons, the motion is **GRANTED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

#### 1. Terms of the Insurance Policy

The Hurlburts live at 119 Pinney Street, Ellington, Connecticut. Compl. ¶ 1, ECF No. 1-1. The Hurlburts allege that they maintain a homeowner's insurance policy with Defendant.[1] Compl. ¶ 3. The Hurlburt's Insurance Policy ("Policy") provides:

> E. Additional Coverages
> \* \* \*
> 8. Collapse
>    a. With respect to this Additional Coverage:
>       (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or any part of the building cannot be occupied for its current purpose.
>       (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.
>       (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.
>       (4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.
>    b. We insure for sudden and accidental direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:
>       (1) The Perils Insured Against named under Coverage C;
>       (2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

---

[1] Paragraph three of the Complaint states that "Defendant Merrimack" provided homeowner's insurance to Plaintiffs. Compl. ¶ 3. Any reference to a defendant or party named "Merrimack" is noticeably absent from the remainder of the Complaint. The Court acknowledges this discrepancy and treats it as a scrivener's error.

Policy at 40, ECF No. 12-7.

> SECTION I: PERILS INSURED AGAINST
> A. COVERAGE A – DWELLING AND COVERAGE B – OTHER STRUCTURES
>   1. We insure against risk of direct physical loss to property described in Coverages A and B.
>   2. We do not insure, however, for loss:
>      a. Excluded under Section 1 – Exclusions;
>         * * *
>      c. Caused by:
>         * * *
>         (6) Any of the following:
>             (a) Wear and tear, marring, deterioration;
>             (b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes to damage or destroy itself;
>             * * *
>             (f) Settling, shrinking, bulging or expansion, including resultant cracking, of . . . foundations, [and] walls . . . .

*Id*. at 42.

> E. Additional Coverages
>    * * *
>    2. Reasonable Repairs
>       a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

*Id.* at 39.

> B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.
>    * * *
>    3. Faulty, inadequate, or defective:
>           c. Materials used in repair, construction . . . .

*Id.* at 1.

3

### 2. The Hurlburts' Claim

On August 7, 2015, after the Hurlburts allegedly noticed visible cracking patterns in the concrete foundation of their home, Compl. ¶ 5, contacted William F. Neal, PE ("Mr. Neal"), "for the specific purpose of conducting a visual examination of the concrete foundation [at Plaintiffs' home]." Opp. Mot. to Dismiss at Exhibit A, at 2, ECF No. 17-1. After Mr. Neal inspected the unfinished basement, he wrote the Hurlburts a letter dated the same day as inspection. *Id*. In relevant part, the letter stated:

> Most of the visible concrete foundation, both exterior and interior, and the garage floor have numerous spider-web cracks. Some of these cracks are as much as ¾" wide and the foundation walls in several locations are bowing inward by as much as 1." Heavy efflorescence (a white powdery from the concrete) is present in many areas of the basement, especially in more heavily cracked areas . . . . There is no way to arrest the process and there is no way to repair the existing damage. The basement walls at this time are structurally unsound and corrective action is necessary . . . . It is my recommendation that the basement walls be replaced. It is not possible to predict how quickly the foundation will deteriorate to the point it is structurally dangerous. I therefore urge you to develop a corrective plan with a licensed contractor as soon as possible.

*Id*.

In September 2015, the Complaint alleges that the Hurlburts made a formal claim for coverage under their homeowner's insurance policy. Compl. ¶ 9. Despite allegedly making all required payments for coverage, *id*. ¶ 4, Defendant allegedly denied the Hurlburts claim by letter dated September 30, 2015. *Id*. ¶ 12.

### B. Procedural History

On February 23, 2017, the Hurlburts sued Defendant in Connecticut Superior Court, Judicial District of Tolland at Rockville. *See generally* Compl. The Complaint includes three counts: (1) breach of contract; (2) breach of duty of good faith and fair dealing; and (3) violation

of the Connecticut Unfair Trade Practices Act and the Connecticut Unfair Insurance Practices Act. *See id.* ¶¶ 13, 15, and 26. The Hurlburts seek money damages; pre- and post-judgment interest under Conn. Gen. Stat. § 37-3a; costs of suit; attorney's fees and costs under Conn. Gen. Stat. § 42-110g; and punitive damages under Conn. Gen. Stat. § 42-110g. *Id*.

Defendant removed the case to this Court on March 28, 2017.

Defendant now moves to dismiss the Complaint for failure to state a claim. Mot. to Dismiss, ECF No. 11.

On February 21, 2018, the Court heard oral argument on the motion. ECF No. 24.

## II. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The Court will dismiss any claim that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), the Court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the Complaint must contain "factual amplification . . . to render a claim plausible."

*Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

All of the factual allegations in the complaint will be taken as true. *Iqbal*, 556 U.S. at 678. The factual allegations will also be viewed in the light most favorable to the plaintiff, and all inferences will be drawn in favor of the plaintiff. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), *cert. denied*, 537 U.S. 1089 (2002).

Courts considering motions to dismiss under Rule 12(b)(6) generally limit its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005). Accordingly, the court may review the homeowner's insurance contract attached in this record by Defendant.

## III. DISCUSSION

This case, like a number of other recent decisions in the District of Connecticut, requires the Court to examine the provisions of an insurance policy, after homeowners have discovered that the concrete supporting the walls of their home are deteriorating. *See, e.g., Zamichie, v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-CV-739 (VAB), 2018 WL 950116 (D. Conn. Feb. 20,

2018); *Cyr v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-cv-85 (DJS), slip op. (D. Conn. Jan. 29, 2018); *Makufka v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-cv-00567 (VLB), 2018 WL 465775 (D. Conn. Jan. 18, 2018); *Gabriel v. Liberty Mut. Fire Ins. Co.*, No. 3:14-cv-01435-VAB, 2017 WL 6731713 (D. Conn. Dec. 29, 2017); *Allstate Ins. Co. v. Swaminathan*, No. 3:16-cv-1708 (VAB), 2017 WL 6614092 (D. Conn. Dec. 27, 2017); *Liston-Smith v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-cv-510 (JCH), 2017 WL 6459552, (D. Conn. Dec. 15, 2017); *Lees v. Allstate Ins. Co.*, No. 3:15-cv-1050 (VAB), 2017 WL 5906613 (D. Conn. Nov. 30, 2017); *Manseau v. Allstate Ins. Co.*, No. 3:16-cv-1231 (MPS), 2017 WL 3821791 (D. Conn. Aug. 31, 2017); *Adams v. Allstate Ins. Co.*, 276 F. Supp. 3d 1 (D. Conn. 2017); *Clough v. Allstate Ins. Co. et al.*, No. 3:17-cv-140 (JBA) (D. Conn. Aug. 29, 2017); *Agosti v. Merrimack Mut. Fire Ins. Co.*, No. 3:16-cv-1686 (SRU), 2017 WL 3710786 (D. Conn. Aug. 28, 2017); *Valls v. Allstate Ins. Co.*, No. 3:16-cv-1310 (VAB), 2017 WL 4286301 (D. Conn. Sept. 27, 2017); *Metsack v. Liberty Mut. Fire Ins. Co.*, 3:14-cv-1150 (VLB), 2017 WL 706599 (D. Conn. Feb. 21, 2017).

The critical issue at the pleading stage is whether, taking all facts as true and construing them in favor of the Hurlburts, the Hurburts have plead a plausible claim under their homeowners insurance policy. Because the Hurlburts' policy covers only "an abrupt falling down or caving in of a building," Homeowners Insurance Policy ("Policy") at 40, Def.'s Br. Exs. C-1, C-2 ECF Nos. 12-3, 12-4, which cannot reasonably be read to embrace the gradual deterioration of property over time, the Complaint must be dismissed.

### A. BREACH OF CONTRACT

Under Connecticut law, "the terms of an insurance policy are to be construed according to the general rules of contract construction"; that is, the Court must discern the intent of the parties as articulated in the provisions of the policy. *Liberty Mut. Ins. Co. v. Lone Star Indus.,*

*Inc.*, 290 Conn. 767, 795 (2009). "[T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." *Id.* at 796. Instead, a court must read the words of the policy with "their natural and ordinary meaning," and resolve any ambiguity in favor of the insured. *Wentland v. Am. Equity Ins. Co.*, 267 Conn. 592, 600–01 (2004). "The court must conclude that the language should be construed in favor of the insured unless it has 'a high degree of certainty' that the policy language clearly and unambiguously excludes the claim." *Id.* (*quoting Kelly v. Figueiredo*, 610 A.2d 1296, 1299 (Conn. 1992)).

### 1. Policy Coverage for Sudden and Accidental Direct Physical Loss

The Hurlburts allege that "the concrete deterioration and cracking were caused by a chemical reaction in the concrete . . . [this] condition substantially impairs the structural integrity of the building." Compl at ¶¶ 7–8. Defendants argue that the Hurlburts' loss is gradual and will occur over time and is therefore not a "sudden and accidental direct physical loss." *See* Def.'s Mem. in Supp. of Mot. to Dismiss at 7. The Court agrees.

The insurance policy covers "sudden and accidental direct physical loss to covered property involving collapse of a building or any part of a building . . . ." Policy at 40. Over fifteen years ago, the Connecticut Supreme Court interpreted the clause "sudden and accidental" in a pollution context. The court in *Buell Industries, Inc. v. Greater New York Mutual Insurance*, 791 A.2d 489 (Conn. 2002), interpreted the meaning and applicability of the "sudden and accidental" exception to the pollution exclusion contained in the defendants' insurance policies. *Id.* at 29. The *Buell* court rejected the plaintiff's argument that "sudden" meant "only unexpected" and concluded "the term 'sudden' requires that the release [of pollutants] in question occurs abruptly or within a short amount of time." *Id*. at 541.

Numerous courts in this District have applied *Buell* when interpreting insurance policies that allegedly cover losses due to crumbling or cracking concrete ailing Connecticut homeowners. *See, e.g.*, *Valls*, 2017 WL 4286301 (D. Conn. Sept. 27, 2017) (applying *Buell* and dismissing all claims, including breach of contract); *Adams v. Allstate Ins. Co.*, 276 F. Supp. 3d 1 (D. Conn. 2017) (same); *Clough*, 2017 WL 3763841 (same); *Miller v. Allstate Ins. Co.*, No. 3:16-cv-2059 (JBA), 2017 WL 3763425 (D. Conn. 2017) (same); *see also, e.g.*, *Metsack v. Liberty Mut. Fire Ins. Co.*, 3:14-cv-1150 (VLB), 2017 WL 706599, at *8 (D. Conn. Feb. 21, 2017) (concluding that "sudden" unambiguously excluded coverage for long-term deterioration of concrete); *Cyr v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-cv-85 (DJS), slip op. (D. Conn. Jan. 29, 2018); *Makufka v. CSAA Fire 7 Cas. Ins. Co.*, 3:16-cv-00567, 2018 WL 465775 (D. Conn. Jan. 18, 2018).

"The fact that the parties advocate different meanings of the [] clause does not necessitate a conclusion that the language is ambiguous." *Kelly*, 610 A.2d at 1299 (internal quotation marks omitted). Here, the contract language is unambiguous; the limiting term "sudden" requires a temporal quality. *See Manseau*, 2017 WL 3821791, at *5 ("[T]he term 'sudden,' used in the context of the phrase 'sudden and accidental' is unambiguous, and must be accorded a temporal quality."); *Clough*, 2017 WL 3763841, at *3 (finding that the plaintiffs had alleged "progressive deterioration that may in the future be punctuated with sudden breaks or collapses," but that "[w]ithout any allegation of suddenness, and with allegations that explicitly contradict the possibility that any sudden loss has already occurred, Plaintiff's claim is not plausibly covered by the plain language of the policy unless it falls under the limited exception for certain kinds of collapses"). The Hurburts have not alleged a "sudden" loss. *See, e.g.*, Compl. ¶ 5 ("Over time, the Plaintiffs observed visible cracking patterns in the concrete of their home.").

The lack of ambiguity in the policy language and the overwhelming body of case law make clear that the Hurlburts have failed to state a claim upon which the Court may provide relief.

## 2. Policy Coverage for Collapse

The Hurlburts allege that the concrete in their basement is deteriorating and cracking due to a chemical reaction in it, "and that this chemical reaction would continue to progressively deteriorate the basement walls, rendering the structure unstable[.]"[2] Compl. ¶ 7. The Hurlburts therefore argue that the Policy covers such a loss. Defendants contend that "Plaintiffs have not alleged that their home has fallen down or caved in, or that it has done so abruptly, or that the home cannot be occupied for its intended purpose." Mot. to Dismiss at 2–3. The Court agrees.

The limiting language "abrupt" renders "collapse" unambiguous. The term "abrupt" must be "accorded its natural and ordinary meaning." *Connecticut Med. Ins. Co. v. Kulikowski*, 942 A.2d 334, 338 (Conn. 2008). "To ascertain the commonly approved usage of a word in an insurance policy, it is appropriate to look to the dictionary definition of the term." *Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.*, 84 A.3d 1167, 1176 n.8 (Conn. 2014) (internal citation and alteration omitted). "The ordinary meaning of the word 'abrupt' is 'characterized by or involving action or change without preparation or warning.'" *England v. Amica Mut. Ins. Co.*, No. 3:16-cv-1951 (MPS), 2017 WL 3996394, at *5 (D. Conn. Sept. 11, 2017) (quoting *Merriam Webster's Collegiate Dictionary* (10th ed. 1994)).

---

[2] The Hurlburts allege in their opposition to the motion to dismiss that "one of the after effects of the ongoing chemical reaction to the home is that it is collapsing. In this case, the Hurlburts argue that the walls are cracking, have given way and [are] essentially caving in." Even if true, however, Plaintiffs have not alleged that the home is no longer habitable nor have they alleged that they do not live at the residence.

The contract covers only "abrupt" collapse. By alleging that the concrete in their basement is deteriorating, which may or may not lead to a collapse, the Hurlburts have not alleged an "abrupt collapse."

### i. "Collapse" is Unambiguous

The Hurlburts argue that the term "collapse" is ambiguous due to the qualifying provision that collapse due to "decay" is covered. Opp'n. Mot. to Dismiss at 6. Plaintiff contends that *Dalton v. Harleysville Worcester Mutual*, 557 F.3d 88 (2d Cir. 2009), supports this position. *Id.* at 93 (finding an ambiguity in the contract language between a sudden occurrence and a slow process where a policy defines collapse as caused by "hidden decay"). The Court sees in *Harleysville* no parallel with this case.

"*Harleysville* addressed the slightly different question of whether, as a matter of New York law, collapse must be sudden when a policy does not place any temporal restrictions on the definition of collapse." *Adams*, 2017 WL 3763837, at *4.

The present case is inapposite to *Harleysville*. Here, the contract expressly states that a "[c]ollapse means an abrupt falling down or caving in of a building . . . [and a] sudden and accidental direct physical loss[.]" Policy at 40. Although "collapse" by itself may be ambiguous,[3]

---

[3] If "collapse" was by itself ambiguous, Connecticut's definition of "substantial impairment" would apply. *Beach v. Middlesex Mut. Assurance Co.*, 205 Conn. 246, 253 (1987). Courts in this District have, on numerous occasions, allowed concrete claims to proceed to summary judgment when the term 'collapse' has been without qualification in the policy. *See, e.g.*, *Metsack v. Liberty Mut. Fire Ins. Co.*, 2015 WL 5797016 (D. Conn. Sept. 30, 2015); *Gabriel v. Liberty Mut. Fire Ins. Co.*, 2015 WL 5684063 (D. Conn. Sept. 28, 2015); *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157 (D. Conn. 2014); *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110 (D. Conn. 2014); *accord. Agosti v. Merrimack Mut. Fire Ins. Co.*, No. 3:16-cv-01686 (SRU), 2017 WL 3710786, at *4 (D. Conn. Aug. 28, 2017) ("For the reasons stated by the Connecticut Supreme Court in *Beach v. Middlesex Mutual Assurance Co.*, and subsequently followed by many judges of this court, I conclude that the term 'collapse,' standing alone, 'is sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building.'") (quoting

the inclusion of "decay" as a possible cause of "collapse" does not render the term ambiguous by subverting the qualifying language in the contract. Decay is but one possible way in which a "collapse" may occur; offering decay as a possible cause does not create ambiguity in otherwise unambiguous contractual language.

The Hurlburts also cite to *130 Slade Condominium Association, Inc. v. Millers Capital Insurance Co.*, No. CIV.A. CCB-07-1779, 2008 WL 2331048 (D. Md. June 2, 2008). But there the court's conclusion did not turn on whether the policy language was ambiguous. Instead, the court found that the property had "caved in . . . when the steel supporting column buckled approximately three inches down and three inches to the south." *Id.* at *5. *130 Slade Condominium Association, Inc.* therefore did not concern facts analogous to those at issue here.

Additionally, *Malbco Holding, LLC v. Amco Insurance Co.*, 629 F. Supp. 2d 1185 (D. Or. 2009), another decision cited by the Hurlburts, is similarly distinguishable. In a similar case, Judge Underhill distinguished the *Malbco* decision in *Alexander v. Gen. Ins. Co. of Am.*, No. 3:16-cv-59 (SRU), Trans. of Mot. Hearing, July 7, 2016, (D. Conn. July 7, 2016), noting that in *Malbco* portions of the insured building had fallen a few inches and the trusses broke. *Id.* at 9. Moreover, the structural damage was so severe that parts of the building could not be occupied. *Malbco Holding, LLC*, 629 F. Supp. 2d at 1191. Here, by contrast, the Complaint fails to allege an abrupt falling down or caving in, nor have the Hurlburt's alleged that they cannot use their home for its intended purpose.

Consequently, the Hurlburts' Complaint fails to plausibly allege that their home or any portion thereof has collapsed within the meaning of the policy.

---

*Beach*, 205 Conn. at 252). Here, however, qualifying language supplements "collapse" and is not ambiguous. Accordingly, the Court need not address the applicability of *Beach*.

### ii. Deterioration as a "State of Collapse"

The Hurlburts do not allege a "falling down or caving in of a building." Policy at 40. Instead, they allege "that th[e] chemical reaction would continue to progressively deteriorate the basement walls, rendering the structure unstable[.]" Compl. at ¶ 7. Defendant asserts that the Hurlburts have failed to allege an "abrupt falling down or caving in. Def.'s Br. at 14. The Court agrees.

The Policy expressly states that "[a] building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse." Policy at 40. The collapse provision therefore does not insure the Hurlburts' putative loss until such time as the property "abrupt[ly] fall[s] down or cav[es] in." *Id.*; *see, e.g.*, *Liston*-Smith, 2016 WL 6246300, at *8 (finding that a CSAA policy requiring "an abrupt falling down or caving in" did not cover plaintiffs' home because "the walls were deteriorating as a result of a progressive condition, remained upright, and the home was still inhabitable for its intended purpose").

Furthermore, the Policy states that "[c]ollapse means an abrupt falling down or caving in of a building . . . with the result that the building . . . cannot be occupied for its current intended purpose." *Id.* Currently, the Hurlburts reside in their home and have not alleged that they cannot or do not use it for its "current intended purpose." Compl. at ¶ 1; *see, e.g.*, *Liston-Smith*, 2016 WL 6246300, at *8 (finding that the home was still inhabitable even though the walls were deteriorating).

The Hurlburts' Complaint insufficiently pleads a claim for relief under the Policy's collapse provision.

### 3. Policy Coverage for a Chemical Reaction

Alternatively, the Hurlburts assert that the policy insures against chemical reactions. The Hurlburts argue that by omitting a "chemical reaction" from the coverage exceptions, Defendant insures against chemical reactions. Compl. ¶ 10. Defendant maintains that, regardless of the involvement of a chemical reaction, the Hulburts cannot obtain coverage without pleading facts that, if proven, would establish "an abrupt falling down or caving in . . . the result that the building or part of the building cannot be occupied for its current intended purpose," which they have not. Policy at 40. The Court agrees.

The Hurlburts gloss over several coverage exclusions. For example, the Policy expressly states that it does not cover the cracking of foundations or walls, deterioration, or latent defect. *Id.*; *see, e.g.*, *Agosti v. Merrimack Mut. Fire Ins. Co.*, No. 3:16-cv-01686 (SRU), 2017 WL 3710786, at *3 (D. Conn. Aug. 28, 2017) (finding that plaintiffs' loss was excluded even though the "insurance policy does not exclude by name losses that are caused by chemical reactions," but "expressly exclude 'loss consisting of or caused by . . . settling, cracking, shrinking, bulging or expansion of . . . foundations [or] walls.'"). The Complaint attributes the cracking to deterioration or latent defect. *See* Opp. Mot. to Dismiss, Ex. A at 2 ("[ASR] typically causes this type of distress to be visible 15 to 20 years after the foundation is poured. The ASR will continue to deteriorate the concrete and the basement walls will continue to bulge inward until they structurally fail.").

Moreover, the Hurlburts maintain that a chemical reaction is a "sudden and accidental direct physical loss." Opp'n. Mot. to Dismiss at 4. Other courts in this District have heard and rejected this and similar arguments. For example, *Agosti* rejected the argument, stating that "loss—if not considered an imminent collapse—clearly 'consist[s] of . . . settling, cracking,

shrinking, bulging or expansion of . . . foundations [or] walls.' The technical cause of the cracking or bulging is irrelevant." 2017 WL 3710786, at *3 (internal citations omitted); *see also England*, 2017 WL 3996394, at *6 ("'[D]irect physical loss' and 'loss,' as used in the Polic[y], unambiguously require some change to the detriment of the insured, and a chemical reaction—without any physical manifestations—does not fit that bill."). The Court sees no reason to disagree with the reasoning in *Agosti*.

Because the Hurlburts have not plausibly allege that cracking concrete constitutes a "sudden and accidental" collapse, the Hurlburts' have not plead a claim upon which the Court may grant relief.

### 4. Policy Coverage for Reasonable Repairs

Plaintiffs argue that the "Additional Coverages" portion of the policy, which states that the insurer will pay the cost of "Reasonable Repairs," should cover the deterioration because such repairs will preemptively prevent a collapse that will then be covered under the policy. Opp'n. Mot. to Dismiss at 7. Defendants contend the terms of the contract preclude coverage because the Hurlburts have failed to allege an abrupt collapse or sudden and accidental loss. The Court agrees.

The policy provides: "We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage." Policy at 39. The term "Peril Insured Against" is defined as "sudden and accidental direct physical loss to property described in Coverages A [dwelling] and B [personal property] . . . [w]e do not insure, however, for loss: . . . [i]nvolving collapse, except as provided in E.8. Collapse . . . ." Policy at 42. Further, the scope of "Peril[s] Insured Against" expressly excludes "deterioration . . . latent defect . . . other corrosion . . . [or] cracking . . . ." *Id*.

Because the Hurlburts have not alleged "a sudden and accidental direct physical loss" as set out above, even taking the facts as true and construing them in favor of the Hurlburts, the Additional Coverage provision cannot be reasonably read to include the loss alleged here. *See, e.g.*, *Adams*, 2017 WL 3763837, at *4 (finding that plaintiffs had failed to allege a sudden collapse); *Manseau*, 2017 WL 3821791, at *5 ("Regardless of whether the loss is characterized as a collapse or a chemical reaction, Plaintiffs fail to allege that any loss occurred suddenly, that is, temporally abruptly, as required for coverage to apply.").

Additionally, the Hurlburts' loss falls within several losses expressly excluded as a "Peril Insured Against." *See, e.g.*, Policy at 42. The Policy excludes "deterioration . . . latent defect . . . other corrosion . . . [or] cracking . . . ." *Id.* The Hurlburts have plead that the foundation in their home is cracking. Compl. at ¶ 7. Absent a collapse, this is precisely the type of loss the Policy specifically excludes. *See, e.g.*, *Clough*, 2017 WL 3763841, at *5 (finding that although the deterioration may at some point cause the house to collapse, a plaintiff must wait until that time to seek coverage).

Accordingly, Plaintiffs failed to state a plausible claim for relief on the grounds that the "Reasonable Repairs" provision covered their loss.

### 5. Policy Coverage for Ensuing Loss

The Hurlburts also argue that the "ensuing loss" provision applies. Opp'n. Mot. to Dismiss at 7. The Court disagrees.

The "ensuing loss" provision expressly provides that: "We do not insure for loss to property described in Coverages A and B cause by any of the following." Under a subsection, the Policy excludes "[f]aulty, inadequate or defective . . . [m]aterials used in . . . construction." *Id.*

Because the concrete was used in the construction of their home, the Hulburts have not raised a plausible claim under the "ensuring loss" provision of the policy.

Moreover, the Policy provides: "[A]ny ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered." Policy at 1. As discussed above, both the Policy's "Collapse" and the "Perils Insured Against" provisions expressly preempt, as plead, the Hulburt's ability to rely on the "ensuing loss" provision.

For the reasons stated above, the Hurlburts have failed as a matter of law to state a claim upon which the Court may grant relief.[4]

### B. THE COVENANT OF GOOD FAITH AND FAIR DEALING

The Hurlburts contend that Defendant's "unreasonably and in bad faith, [] interpreted policy provisions in a manner [and] for the purpose of denying benefits despite the aforementioned provisions of the policy conferring benefits." Compl. ¶ 15. Defendant contends that, absent a viable breach of contract, there can be no such claim. The Court agrees.

While each contract imposes a duty of good faith and fair dealing on the parties, Connecticut law requires a breach of contract in order to plead bad faith. *Valls*, 2017 WL 4286301, at *5; *see also Capstone Bldg. Corp. v. Am. Motorists Ins.* Co., 67 A.3d 961, 988 (Conn. 2013) (concluding that "bad faith is not actionable apart from a wrongful denial of a benefit under [an insurance] policy.").

Because Plaintiffs, as a matter of law, have not plead a plausible claim for breach of contract, their claim for breach of the implied covenant of good faith and fair dealing also fails. *Valls*, 2017 WL 4286301, at *4; *see also*, *Manseau*, 2017 WL 3821791, at *5 (dismissing breach

---

[4] At oral argument, Counsel for the Hurlburts conceded that further factual development would not substantively change the allegations in the Complaint as currently pled.

of implied covenant claim in concrete case after court dismissed breach of contract claim); *Agosti*, 2017 WL 3710786, at *8 (same). Accordingly, the Hurlburts fail to state a claim on the basis of the covenant of good faith and fair dealing.

    **C.    CONNECTICUT UNFAIR TRADE PRACTICES ACT AND CONNECTICUT UNFAIR INSURANCE PRACTICES ACT**

Finally, the Hurlburts argue that Defendant's participation in the Insurance Services Office, Inc. ("ISO") demonstrate Defendant's participation in an industry-wide scheme to deny claims by homeowners in Connecticut. Opp'n. Mot. to Dismiss at 11. Defendant contends that absent a viable breach of contract claim, the Hurlburts cannot plead a violation of the CUTPA or the CUIPA. The Court agrees.

"A plaintiff may assert a private cause of action based on a substantive violation of CUIPA through CUTPA's enforcement provision." *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 117 (D. Conn. 2014). "To succeed on such a CUTPA claim, a plaintiff must show that the defendant engaged in an act prohibited by CUIPA's substantive provisions, and that the act proximately caused the harm alleged." *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 165 (D. Conn. 2014).

As discussed above, because the Hurlburts have failed to plead a plausible breach of contract claim, no CUTPA or CUIPA claim can follow. *See Alexander*, 2017 WL 188134, Trans. of Mot. Hearing, July 7, 2016, at 24 ("Because the coverage claim fails, the claims [under] CUTPA and CUIPA, also fail. Quite simply, without coverage there can't be . . . a violation of either of those consumer statutes."); *see also Cyr*, No. 3:16-cv-85, (DJS) slip op. at 17 (agreeing with *Alexander* and granting the insurer summary judgment on the same grounds); *Roberts v. Liberty Mut. Fire Ins. Co.*, 264 F. Supp. 3d 394, 416 (D. Conn. 2017) ("[A] claim for violation of CUTPA/CUIPA cannot succeed in the absence of a viable claim for breach of contract.").

The Complaint fails to allege on its face a claim under the CUTPA or the CUIPA. These statutory claims therefore must be dismissed.

**IV.     CONCLUSION**

Plaintiffs have failed to plead a claim upon which this Court can provide relief.

For the reasons discussed above, the motion to dismiss is **GRANTED**.

The Court instructs the Clerk of the Court to enter judgment for Defendant and close this case.

SO ORDERED at Bridgeport, Connecticut, this 23rd day of February, 2018.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE